**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLORENCE GAFFNEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:14-CV-00643** |
| | : | **(JUDGE MARIANI)** |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The above-captioned matter arises out of an assault and battery that the Plaintiff,

Florence Gaffney, allegedly suffered at the hands of a Social Security Administrative Law

Judge, one Sridhar Boini.  Plaintiff sued multiple Defendants, including Judge Boini and his

employer, the United States Government, under the Federal Tort Claims Act ("FTCA").  The

United States then filed a Motion to Dismiss for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1).  For the reasons that follow, the Court will deny

the Motion without prejudice on 12(b)(1) jurisdictional grounds.  However, the Court will

dismiss the Complaint on the separate ground of failure to state a claim under Rule

12(b)(6).  It will do so with leave to amend so that Plaintiff may submit an amended

complaint that alleges with specificity the actions that the United States' agents or

employees actually took that give rise to FTCA liability.

## II.    Factual Background and Procedural History

This action arises out of two incidents at the Social Security Administration office in

Scranton, Pennsylvania.

The factual allegations may be simply stated.  First, the Plaintiff, Florence Gaffney,

alleges that, while she was present at the Scranton Social Security Office on the afternoon

of June 30, 2011 for other business, Defendant Administrative Law Judge Sridhar Boini

approached her, "reached under her right arm and fondled her right and left breasts" in the

presence of a security guard.  (Compl., Doc. 1, at ¶¶ 18, 20.)  Second, Plaintiff alleges that

several days later, Judge Boini continued his course of sexually illicit conduct by making

"sexual gestures to the Plaintiff . . . using his tongue and mouth" while standing outside the

Social Security office.  (*Id.* at ¶ 21.)

Plaintiff further alleges that "Sridhar Boini[] was an alcoholic and would routinely

consume alcohol during work hours," (*id.* at ¶ 22), that he "routinely and regularly displayed

inappropriate and/or illicit behavior towards females," (*id.* at ¶ 23), and that, at the time that

he fondled Plaintiff's breasts, Plaintiff "smelled an odor of alcohol" on his person, (*id.* at ¶

19).  Finally, Plaintiff alleges—albeit in a conclusory fashion—that "the Defendants,

collectively, by and through their agent [*sic*], servants and employees knew or should have

known that the Defendant, Sridhar Boini, became intoxicated during work hours and

behaved inappropriately and/or illicitly around females" and that "the conduct of the

2

Defendants, Individually, and by and through their agents, servants and/or employees . . . were careless and negligent." (*Id.* at ¶¶ 24-25.)

The United States filed the aforementioned Motion to Dismiss, arguing that as a matter of law it had not waived its sovereign immunity from this particular type of suit under the FTCA. The Court held Oral Argument on the Motion on March 16, 2015.

Plaintiff stated in her brief and reiterated during Oral Argument that her claim against the United States does not rest on the premise that the Government is liable for actions that Judge Boini took within the scope of his employment, as would be the typical ground for an FTCA claim. Rather, Plaintiff states that her claim only "arises from the [United States'] failure to protect [her] from Judge Boini." (*See* Pl.'s Br. in Opp. to Mot. to Dismiss, Doc. 16, at 2 n.1.)

Now that the Court has heard Oral Argument, the matter is ripe for resolution.

## III. Analysis

### a. Subject Matter Jurisdiction

#### i. Standard of Review

Defendant challenges Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1), which authorizes the Court to dismiss a Complaint for lack of subject-matter jurisdiction. (Def.'s Br. in Supp. of Mot. to Dismiss, Doc. 14, at 3.)

There are two types of 12(b)(1) motions: "12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in

3

fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d

884, 891 (3d Cir. 1977). "[A]t issue in a factual 12(b)(1) motion is the trial court's

jurisdiction[,] its very power to hear the case." *Id.* Thus, in evaluating such factual

challenges,

> there is substantial authority that the trial court is free to weigh the evidence
> and satisfy itself as to the existence of its power to hear the case. In short, no
> presumptive truthfulness attaches to plaintiff's allegations, and the existence
> of disputed material facts will not preclude the trial court from evaluating for
> itself the merits of jurisdictional claims. Moreover, the plaintiff will have the
> burden of proof that jurisdiction does in fact exist.

*Id.*

However, the courts demand less proof in deciding a factual challenge to jurisdiction

than it would at other stages of trial. *See Moyer Packing Co. v. United States*, 567 F. Supp.

2d 737, 748 (E.D. Pa. 2008). "[D]ismissal for lack of jurisdiction is not appropriate merely

because the legal theory alleged is probably false, but only because the right claimed is 'so

insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise

completely devoid of merit as not to involve a federal controversy.'" *Kulick v. Pocono*

*Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation*

*v. County of Oneida*, 414 U.S. 661, 666, 94 S. Ct. 772, 777, 39 L. Ed. 2d 73 (1974)).

Courts in the Third Circuit typically treat a motion to dismiss which argues that a

Complaint has not satisfied all elements necessary to advance an FTCA claim as

constituting a factual challenge to jurisdiction reviewable under Rule 12(b)(1). *See*

*generally Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *see*

4

*also CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008); *Cestonaro v. United States*, 211 F.3d 749, 752 (3d Cir. 2000). This Court will follow the same procedure here. That is, because here the United States claims that it cannot be liable for Judge Boini's conduct as a matter of law, irrespective of the allegations in the Complaint, (*see* Def.'s Reply Br. to Mot. to Dismiss, Doc. 17, at 6), the Court considers its Motion to be a factual challenge to subject matter jurisdiction under Rule 12(b)(1), and evaluates it according to the standards enumerated above.

### ii. Federal Tort Claims Act

As a general rule, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *See United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 769, 85 L. Ed. 1058 (1941). In passing the Federal Tort Claims Act, however, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees." *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994). Specifically, the FTCA waives immunity for, and thus allows the district courts to hear,

> civil actions on claims against the United States, for money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Generally, the FTCA does not waive sovereign immunity for intentional torts, such as assault and battery. *See id.* at § 2680(h). Nonetheless, in *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), the Supreme Court carved out another "exception to [this] exception to an exception to [the] general rule" of sovereign immunity. *CNA*, 535 F.3d at 148.[1] That is, the *Sheridan* Court held that, though it is generally true that the Government is not liable for its employee's intentional torts, if other Government employees negligently "allowed a foreseeable assault and battery to occur," even when the assailant is a co-worker, then those other employee's negligent failure to protect "may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status." *Sheridan*, 487 U.S. at 401, 108 S. Ct. at 2455 (allowing an FTCA claim to proceed when Naval Hospital employees allegedly failed to protect the public from assault by an off-duty serviceman known to be intoxicated and armed with a rifle).

The Third Circuit has had occasion to explicitly address *Sheridan* situations at least twice in the intervening years. First, in *Matsko v. United States*, 372 F.3d 556 (3d Cir. 2004), the Circuit allowed an FTCA claim to proceed under allegations that employees of the Mine Safety and Health Administration (MSHA) failed to protect a business invitee from assault by MHSA co-worker Rudy Kotor. *See Matsko*, 372 F.3d at 557, 561-62. Kotor

---

[1] The Third Circuit elaborated:

The general rule is sovereign immunity: the Government cannot be sued. The FTCA creates an exception to that rule by waiving sovereign immunity. That waiver of sovereign immunity comes with conditions . . . and exceptions (such as the assault-and-battery exception of § 2680(h)). But *Sheridan* established that claims of independent negligence committed by Government employees are not barred by the assault-and-battery exception.

*CNA*, 535 F.3d at 148.

"slammed [the plaintiff's] face into a briefcase" after the plaintiff unwittingly sat in Kotor's desk chair. *Id.* at 557. The Circuit found that, if Kotor's co-workers could have foreseen this harm and therefore should have acted to protect the plaintiff, a claim against the United States could lie. *Id.* at 561-62. Because the Complaint alleged facts that an MHSA employee originally offered the plaintiff Kotor's chair to sit in and that, after the attack occurred, another MHSA employee told the plaintiff "I told you don't piss Rudy [Kotor] off," while a supervisor smirked, the Circuit found sufficient allegations to indicate that the United States breached its duty to protect and that dismissal for lack of subject matter jurisdiction was inappropriate. *Id.* at 557-58.

Conversely, in a later case, the Third Circuit found the *Sheridan* exception inapplicable when a high school student—who had been recruited into the Army and who, against direct orders and Army regulations, temporarily lived with his recruiter—stole a handgun from the recruiter's bedroom and robbed and shot a third party. *CNA*, 535 F.3d at 137-38. Though the Circuit recognized *Sheridan*'s validity, it held that the plaintiffs-subrogees' claims "do not fall under [its] holding." *Id.* at 148. The Circuit rejected the argument that a duty to protect existed under the facts of this case because,

> [t]o begin, the harm here was not foreseeable. To repeat, the corpsmen in *Sheridan* knew danger lurked if they allowed a drunk serviceman with a loaded rifle to leave hospital grounds. But in our case Lewis [i.e., the recruiter] knew of no obvious danger in taking in a recruit [i.e., the assailant] who had passed background checks. And Lewis's supervisor (Albrecht) likewise knew of no obvious danger that Lewis would defy his order that Lewis not take Armstrong into Lewis's home.

7

*Id.* at 148-49. Therefore, the Circuit held that neither Lewis nor Albrecht had a duty to
protect the public from this particular type of harm.

The Circuit also found another independent reason to hold that the United States
had not waived immunity from suit for Albrecht's conduct, notwithstanding the nonexistence
of a duty. Because all of Albrecht's interactions with his subordinate Lewis occurred in the
context of the employment relationship, any claim of wrongdoing would necessarily
implicate Albrecht's failures as a supervisor. *Id.* at 149. But *Sheridan* only allows liability for
negligence "entirely independent" of the employment relationship. *See Sheridan*, 487 U.S.
at 401, 108 S. Ct. at 2455. In *CNA*, however,

> Subrogees' claims with regard to Albrecht's conduct are not "entirely
> independent" of Lewis's status as a government employee. Independent
> negligence in this context means negligence irrespective of an employment
> relationship. Negligent supervision claims like Subrogees' claims concerning
> Albrecht, on the other hand, are rooted in supervisor-supervisee relationships
> at work; they relate closely to the supervisee's (in our case, Lewis's)
> employment status.  Unlike the corpsmen in *Sheridan*, whose alleged
> negligence had nothing to do with the drunk serviceman's employment
> relationship with the Navy, Albrecht's allegedly negligent supervision of Lewis
> had everything to do with Lewis's employment relationship with the Army.
> Albrecht's only alleged connection to the shooting results from Lewis's status
> as his subordinate.

*CNA*, 535 F.3d at 149 (internal citations omitted).

In its briefs, (*see* Doc. 17 at 2-3 & n.1), and at Oral Argument, Defendant argued that
this passage in *CNA* establishes the proposition that negligent failure to protect claims
cannot be "entirely independent" of an assailant's status as a Government employee so
long as the Government gained its knowledge of the danger presented by the assailant

solely through the employer-employee relationship. Thus, according to this logic, if the United States learned that Judge Boini was frequently drunk and behaved inappropriately towards women only by observing his behavior at work, then an FTCA claim could not be asserted because such knowledge was necessarily derived from the employment relationship. On the other hand, if the Government learned the exact same information by observing Judge Boini's conduct outside the Social Security property after work hours, then such knowledge would not stem from the employment relationship, and the United States would apparently believe that an FTCA claim would be permissible.

This argument, however, represents a tortured reading of *CNA*. As an initial matter, it is facially inconsistent with *Matsko*, which *CNA* did not purport to overrule. In *Matsko*, there is no evidence or even discussion of whether the negligent MHSA employees knew about Kotor's propensity for violence from contacts made inside or outside of the office setting. Indeed, it is hard to understand why such a distinction could be relevant. If "the Government has a duty to prevent a foreseeably dangerous individual from wandering about unattended," *Sheridan*, 487 U.S. at 403, 108 S. Ct. at 2456, then it would serve no rational purpose to hold that the duty only attaches if the Government foresaw danger based on actions that the individual took while "off the clock," or—even more perversely— that the Government may ignore foreseeable dangers just because they happened to arise during an employee's work time.

9

It is much more reasonable to understand the phrase "entirely independent of the

employment relationship" as referring to the *conduct* that forms the basis of liability. Thus,

Kotor's anger and violence had nothing to do with his employment as a Mine and Health

Safety worker in *Matsko*, just as the serviceman in *Sheridan*'s intoxicated rifle use had

nothing to do with his employment in the Armed Forces. The *Sheridan* Court appeared to

follow similar logic by placing the focus of its analysis on the substance of the Government's

duties and not on technicalities related to employment status:

> [Assuming that a negligence cause of action could lie against the Government
> under state law,] it seems perfectly clear that the mere fact that Carr [i.e., the
> assailant] happened to be an off-duty federal employee should not provide a
> basis for protecting the Government from liability that would attach if Carr had
> been an unemployed civilian patient or visitor in the hospital. Indeed, in a
> case in which the employment status of the assailant has nothing to do with
> the basis for imposing liability on the Government, it would seem perverse to
> exonerate the Government because of the happenstance that Carr was on a
> federal payroll.

*Id.* at 402, 108 S. Ct. at 2455-56. Such language plainly indicates that the Government's

duty to protect did not stem solely from the fact that the Government employed Carr, but

rather that it knew that an intoxicated and dangerous person was on the loose, regardless of

who happened to employ him. *Cf. generally id.* at 401-03, 108 S. Ct. at 2455-56. Thus, to

accept the Government's interpretation of *CNA* would revert to the technical and arbitrary

distinctions that *Sheridan* sought to avoid.

This is especially true when we consider the fact that the FTCA waives sovereign

immunity "under circumstances where the United States, if a private person, would be liable

to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b)(1). Under the law of the place where the alleged omission occurred,

i.e., Pennsylvania, "a possessor of land who holds that land open to patrons for business

purposes has a duty to prevent tortious acts of third parties to his patrons, or to warn his

patrons of the possibility of such tortious acts." *Moran v. Valley Forge Drive-In Theater,*

*Inc.*, 246 A.2d 875, 878 (Pa. 1968) (citing Restatement (Second) of Torts, § 344); *see also*

*Matsko*, 372 F.3d at 561 & n.10 (basing potential liability on the authority of *Moran* and

Second Restatement section 344). When we treat the United States the same as a private

actor for FTCA purposes, this tort rule compels the conclusion that the Defendants here

could be liable under Pennsylvania law for failing to protect the Plaintiff from Judge Boini.

On the other hand, if the Court were to accept the Government's interpretation of *CNA*, it

would significantly narrow the scope of the tort as defined by Pennsylvania law, an action

which neither the FTCA nor general principles of federalism allows it to do. Neither this

Court nor the Third Circuit in *CNA* is authorized to modify the clear language of the FTCA or

to change the tort law pronounced by Pennsylvania's highest court.

For all of these reasons, *CNA* cannot be said to invalidate Plaintiff's claim against the

United States as a matter of law. Rather, the Court finds that, if properly pled, Plaintiff's

allegations could state a claim for failure to protect under *Sheridan*, *Matsko*, and *CNA*. That

is, if Plaintiff can plead that Judge Boini presented a foreseeable danger to invitees like

herself, and that the United States failed to protect her from this foreseeable danger, then

her case would fall squarely under the *Sheridan* exception to the intentional torts exception to the FTCA, and this Court would have jurisdiction to hear her claim against the United States.

Defendant's 12(b)(1) Motion will therefore be denied. Such denial, however, is without prejudice so that the Government may renew its Motion if, at some later stage of the proceedings, evidence comes to light that calls the continued existence of subject matter jurisdiction into question.

### b. Failure to State a Claim

#### i. Standard of Review

Notwithstanding the fact that the Court rejects the contention that subject matter jurisdiction cannot exist as a matter of law, it nonetheless finds that dismissal is appropriate under Rule 12(b)(6) for failure to state a claim. Moreover, "[t]he District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6)." *Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 Fed. App'x 940, 943 (3d Cir. 2008) (citing *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980)).[2]

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A

---

[2] The Government mentions Rule 12(b)(6) in its formal Motion, but not in any of its supporting briefs. (*See* Mot. to Dismiss, Doc. 13, at 1.) Because the parties have not briefed the 12(b)(6) issue and only discussed it at the Court's prompting during Oral Argument, dismissal on this ground is essentially *sua sponte*.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965.  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even if a "complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### ii. Deficiencies in the Complaint

When judged against these standards, it is clear that Plaintiff's allegations against the United States only rely on legal labels and conclusions, and therefore represent "a formulaic recitation of a cause of action's elements" that fails to state a claim under *Twombly* and *Iqbal*.

For instance, the Complaint only states generally that "the Defendants, collectively, by and through their agents, servants and employees, knew or should have known that the Defendant, Sridhar Boini, became intoxicated during work hours and

14

behaved inappropriately and/or illicitly around females." (Compl. at ¶ 24.) It does not state how the Defendants—all of whom, aside from Judge Boini, are corporate entities— came upon this information, what specifically they knew prior to the Gaffney incident,[3] which employees of the particular Defendants knew this information, how these employees' knowledge can be imputed to each Defendant entity, and so on. Likewise, while Plaintiff recites that "the conduct of the Defendants, Individually, and by and through their agents, servants and/or employees, as set forth more specifically herein were careless and negligent," (*id.* at ¶ 25), she does not further describe just what the Defendants and their agents, servants, and employees actually did to constitute negligence, including, most obviously, how they negligently failed to protect her from Judge Boini. Finally, the list of alleged forms of negligence in paragraph 33 only amount to conclusions unsupported by well-pleaded facts. While Plaintiff alleges such things as the United States "fail[ed] to protect the safety of individuals presenting to the Social Security Administration office; . . . to reprimand, suspend and/or discipline Administrative Law Judge Boini; . . . to report that the Defendant, Sridhar Boini consumed alcohol during the work day and continued to work while impaired and/or intoxicated," (*id.* at ¶ 33(b), (c), (e)), and so on, the Complaint does not describe who in particular is believed to have failed to do these things and what facts gave rise to a duty to do them.

---

[3] Though the Complaint states in the immediately preceding paragraph, "at all times material, the Defendant, Sridhar Boini, routinely and regularly displayed inappropriate and/or illicit behavior towards females," this statement also is wholly conclusory. (Compl. at ¶ 23.)

15

Without answering these questions—and possibly others—the Complaint cannot state a claim for relief that "is plausible on its face" and goes beyond mere labels and conclusions.  Dismissal for failure to state a claim is therefore appropriate.  However, the Court will dismiss the Complaint without prejudice and with leave to amend, so that the Plaintiff can exercise the opportunity to cure the deficiencies in her pleadings and resubmit an amended complaint that complies with the pleading standards laid out in this Opinion.

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss under Rule 12(b)(1) (Doc. 13) is **DENIED WITHOUT PREJUDICE**.  The Complaint is nonetheless **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** under Rule 12(b)(6).  A separate Order follows.

Robert D. Mariani
United States District Judge

16