THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FLORENCE GAFFNEY,　　　　　　　　：
　　　　　　　　　　　　　　　　　：
　　　　　Plaintiff,　　　　　　　：
　　v.　　　　　　　　　　　　　　：　　3:14-cv-643
　　　　　　　　　　　　　　　　　：　　(JUDGE MARIANI)
UNITED STATES OF AMERICA, et al.,　：
　　　　　　　　　　　　　　　　　：
　　　　　Defendants.　　　　　　 ：

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On the afternoon of June 30, 2011, Plaintiff Florence Gaffney was in the lobby of the Social Security Administration office in Scranton, Pennsylvania, when Administrative Law Judge ("ALJ") Sridhar Boini allegedly walked up behind her in an intoxicated state, reached under her right arm, and grabbed her breasts. As a result of the incident, Plaintiff filed suit alleging that Boini, the United States, Knight Protective Services, Inc., Steamtown Mall Associates, L.P., and Prizm Asset Management Company all negligently caused her injuries. (Doc. 1). Presently before the Court is Steamtown Mall Associates and Prizm Asset Management Company's (collectively "Moving Defendants") Motion for Summary Judgement.[1] (Doc. 81). For the reasons that follow, this Court will grant the Moving Defendants' Motion.

---

[1] The United States filed a separate Motion for Summary Judgement, (Doc. 83), which the Court addresses in a separate Opinion. Boini, who has proceeded pro se, has not moved for summary judgment.

## II. STATEMENT OF UNDISPUTED FACTS

In accordance with Local Rule 56.1, the Moving Defendants have submitted a Statement of Material Facts in support of their Motion for Summary Judgment, (Doc. 84), and Plaintiff submitted a response, (Doc. 90-1). Thus, the following facts are undisputed, except as specifically noted:

On June 30, 2011, Plaintiff was in the Social Security Administration office located in Scranton, Pennsylvania, when a Social Security employee, ALJ Sridhar Boini, reached under her right arm and fondled her breasts. (Doc. 84 at ¶ 1; Doc. 90-1 at ¶ 1). The building in which the office was located was owned by Steamtown Mall Associates. (Doc. 84 at ¶ 2; Doc. 90-1 at ¶ 2). Prizm Asset Management Company provided management services, including security, for the property. (Doc. 84 at ¶ 4; Doc. 90-1 at ¶ 4). The lobby of the building was staffed by a security guard who required visitors, but not individuals who worked in the building, to sign in before going anywhere in the building. (Dep. of Michael Nesko, Doc. 98-2 at 19-20). The section of the building that the Social Security office occupied was leased to the Social Security Administration and it had its own security personnel provided by Knight Protective Services, Inc.[1] (Doc. 84 at ¶¶ 3, 5; Doc. 90-1 at ¶¶ 3, 5).

---

[1] Knight Protective Services filed for bankruptcy before the initiation of this lawsuit and was never served with the Complaint.

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light

most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### IV. ANALYSIS

Plaintiff has alleged that the Moving Defendants were negligent in failing to protect her from Boini. In Pennsylvania, "[t]o establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). "The existence of

4

a duty owed by a defendant is the threshold question in a negligence action, and this is generally a question of law." *Perez v. Great Wolf Lodge of the Poconos LLC*, 200 F. Supp. 3d 471, 478 (M.D. Pa. 2016) (quotation marks omitted). "Generally, there is no duty to control the acts of a third party unless the Defendant stands in some special relationship with either the person whose conduct needs to be controlled or with the intended victim of the conduct, which gives the intended victim a right to protection." *Reason v. Kathryn's Korner Thrift Shop*, 169 A.3d 96, 102 (Pa. Super. Ct. 2017) (quotation marks and alteration omitted); *see also Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 557-58 (E.D. Pa. 2004) ("As a general rule under Pennsylvania law, absent a pre-existing duty, a party cannot be held liable for the criminal actions of a third party unless that party assumed a duty, through some act of its own.").

Here, Plaintiff argues that the Moving Defendants' duty arose under § 344 and § 323 of the Restatement (Second) of Torts. (Doc. 90 at 5-8). Section 344 of the Restatement provides

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

5

RESTATEMENT (SECOND) OF TORTS § 344. Comment f to § 344 elaborates on a landowner's duty to police his or her land:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

RESTATEMENT (SECOND) OF TORTS § 344 cmt. f. Both § 344 and comment f have been adopted as accurate statements of the law in Pennsylvania. *See Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (Pa. 1968); *Feld v. Merriam*, 485 A.2d 742, 745 (Pa. 1984).

Section 344 does not impose a duty on landowners to prevent all criminal activity or intentional torts that occur on their land. Instead, § 344 only imposes liability when a landowner does not "take reasonable precaution against that which might be *reasonably anticipated*." *Feld*, 485 A.2d at 745 (emphasis added). Thus, a court found that a property owner was under a duty to provide reasonable precautions against an assault that occurred in the owner's parking lot when the owner knew that numerous car thefts had previously occurred on the property. *Morgan v. Bucks Assocs.*, 428 F. Supp. 546, 550-51 (E.D. Pa. 1977). The court reasoned that the history of criminal activity in the parking lot was

6

sufficient for a jury to determine that the property owner knew or should have known that there was a likelihood of third party conduct that could endanger visitors "and that defendant's past experience was 'such that he should reasonably anticipate careless or criminal conduct on the part of third persons.'" *Id.* at 551 (quoting RESTATEMENT (SECOND) OF TORTS § 344 cmt. f); *see also Murphy v. Penn Fruit Co.*, 418 A.2d 480, 483-84 (Pa. Super. Ct. 1980) (holding that a landowner was under a duty to provide reasonable precautions against a stabbing that occurred in the owner's parking lot when there has been a history of purse snatchings and muggings on the property).

Conversely, in *Midgette v. Wal-Mart Stores, Inc.*, a court held that Wal-Mart was not under a duty to take reasonable precautions to prevent an employee's husband from shooting the employee in the store because the plaintiff had "not shown how Defendant had either actual or constructive knowledge of the likelihood of [the husband]'s conduct" or any "evidence of frequent episodes of domestic violence occurring on the store premises by [the husband] or anyone else." 317 F. Supp. 2d at 562-63. The Court reasoned that "despite [the husband]'s numerous visits to the store," the plaintiff did not present any evidence that her husband "behaved in a dangerous, violent, or unbecoming manner on the Wal–Mart premises" and that, therefore, it could not "be expected that Wal–Mart would have reason to foresee [the husband]'s violent actions." *Id.* at 562.

Here, there is not a shred of evidence in the record that the Moving Defendants were aware or should have been aware of any prior conduct "such that [they] should [have]

7

reasonably anticipate[d] careless or criminal conduct on the part of third persons, either generally or at some particular time." RESTATEMENT (SECOND) OF TORTS § 344 cmt. f. Indeed, Plaintiff has not produced evidence of *any* other prior incidences, similar or not, of which the Moving Defendants had knowledge. In fact, for reasons not at all clear to this Court, it would appear that Plaintiff's counsel did not even elect to depose a single one of the Moving Defendants' employees to ascertain what they knew.

Nevertheless, Plaintiff argues that Boini routinely entered the building while under the influence of alcohol and that, to enter the building, Boini was required to walk past the Moving Defendants' security guard. (Doc. 90 at 6-7). Thus, Plaintiff argues, the Moving Defendants failed to exercise reasonable care to determine that Boini was intoxicated and to prevent him from entering the building. (*Id.*).

This argument is fatally flawed in at least two respects. First, as noted, Plaintiff has produced no evidence that the Moving Defendants knew "or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor." RESTATEMENT (SECOND) OF TORTS § 344 cmt. f. As such, the Moving Defendants were "under no duty to exercise any care until [they knew] or ha[d] reason to know that the acts of the third person [were] occurring, or [were] about to occur." *Id.*; *see also Midgette*, 317 F. Supp. 2d at 562. Thus, Plaintiff puts the cart before the horse by arguing that the Moving Defendants failed to exercise reasonable care to determine that Boini was intoxicated. The Moving Defendants were under no duty to

8

exercise reasonable care to discover intoxicated persons such as Boini until they had actual or constructive knowledge of either Boini's intoxication or the intoxication of third parties on the premises generally. *Midgette*, 317 F. Supp. 2d at 562.

Second, even if the Court were to accept this theory of liability, the record contains no evidence from which a reasonable jury could conclude that the Moving Defendants should have known that Boini was intoxicated on the day in question. Michael Nesko—the security guard located within the Social Security Administration office and employed by Knight Protective Services—testified that the building's lobby was staffed by a security guard who required visitors, but not individuals who worked in the building, to sign in before going anywhere in the building. (Dep. of Michael Nesko, Doc. 98-2 at 19-20). Referring to the security in the lobby, Boini testified that "[t]here's almost no interaction required. You just walk in. The only guard that I ever had actual contact with was the guard who was assigned to [the Social Security office]." (Dep. of Sridhar Boini, Doc. 90-8 at 90-91). Further, Michael Nesko testified that the only signs of Boini's alcohol consumption that Nesko ever witnessed were that Boini sometimes had alcohol on his breath and bloodshot eyes. (Dep. of Michael Nesko, Doc. 98-2 at 23-24). He also testified that he had "never seen [Boini] visibly intoxicated." (*Id.* at 57). Viewing the record in a light most favorable to Plaintiff, no reasonable jury could conclude that the Moving Defendants had reason to know that Boini was under the influence of alcohol when he only briefly passed by the Moving Defendants'

lone security guard and Boini's only signs of intoxication were alcohol on his breath and bloodshot eyes.

Plaintiff's argument under § 323 of the Restatement (Second) of Torts fares no better. Section 323 provides that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323. Plaintiff argues that because the Moving Defendants provided a security guard for the lobby of the building, they had an obligation to ensure that the security services were being competently provided. This argument fails for the same reason Plaintiff's argument under § 344 failed. There is simply no evidence in the record from which a reasonable jury could conclude that the Moving Defendants' lone security guard was negligent in not recognizing that Boini was under the influence of alcohol when he entered the building. *See Kerns v. Methodist Hosp.*, 574 A.2d 1068, 1077 (Pa. Super. Ct. 1990) ("The mere fact that neither the roving guard, nor the guard assigned to watch the alternating closed circuit monitors noticed the 30 second assault in progress, or noticed the assailants in time to prevent the assault, in no way established any negligence on their part with regard to the limited program of security actually offered.").

More fundamentally, Plaintiff's argument also misconstrues the scope of § 323. "Under subsections (a) and (b) of § 323, liability may be imposed only when the defendant's negligence increases the risk of harm to the plaintiff, or the plaintiff suffers harm in reliance on the defendant's provision of services." *Turbe v. Gov't of V.I.*, 938 F.2d 427, 431 (3d Cir. 1991). The record contains no evidence that would support the applicability of either of the subsections of § 323.

As noted, "for § 323(a) to apply, 'the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance.'" *Sabric v. Lockheed Martin*, 532 F. App'x 286, 293 (3d Cir. 2013) (quoting *Turbe*, 938 F.2d at 432). Here there is no allegation, much less any record support, that the presence of a security guard in the lobby of the building somehow made Plaintiff's situation worse than if there had been no security in the lobby. As for subsection (b), there is no indication that Plaintiff placed any reliance in the lobby's security guard to protect her while she was in the building. For example, there is no indication that Plaintiff decided to go into the building because there was a security guard there, or that Plaintiff would have acted any different had no guard been present when she entered the building. Accordingly, there can be no liability under § 323 on this record.[2]

---

[2] Plaintiff cites *Feld v. Merriam*, 485 A.2d 742 (Pa. 1984), in support of her argument under § 323. *Feld*, however, is not analogous. That case held that, under § 323, "a landlord may . . . incur a duty voluntarily or by specific agreement if to attract or keep tenants he provides a program of security. . . . A tenant may rely upon a program of protection only within the reasonable expectations of the program." *Id.* at 747. Here, Plaintiff is not a tenant of the Moving Defendants' building and there is no indication in the

11

## V. Conclusion

For the reasons outlined above, this Court will grant the Moving Defendants' Motion for Summary Judgement.[3]  A separate Order follows.

Robert D. Mariani
United States District Judge

---

record that the Moving Defendants placed a security guard in the lobby to attract business invitees such as Plaintiff into the building.

[3] In her Amended Complaint, Plaintiff also appears to seek to impose liability on the basis that, some short time after June 30, 2011, Boini allegedly made sexual gestures at her outside of the Social Security office. Plaintiff, however, fails to put forth any theory that would permit recovery on basis of this allegation.

12